IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BREEANA BLALOCK,

       *Plaintiff*,

       **v.**

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

       *Defendant*.

Civil No.: **1:24-cv-01637-JRR**

## MEMORANDUM OPINION

Pending before the court is Defendant's Motion to Dismiss or for Summary Judgment. (ECF No. 29, the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss as to Counts I and II, and as a motion for summary judgment as to Count III, will be granted.

## I.   UNDISPUTED FACTS

The following facts are undisputed:

On May 27, 2021, Plaintiff Breeana Blalock submitted an application through the Bureau of Health Workforce ("BHW") customer service portal for the fiscal year 2021 National Health Service Corps ("NHSC") Substance Use Disorder Workforce Loan Repayment Program ("LRP"). (ECF No. 26-2 at pp. 60-81.) The NHSC LRP was established by Congress to assure an adequate supply of trained primary health professionals for provision of services in the neediest health professional shortage areas in the United States. *Id.* The program is administered by the Health Resources and Services Administration ("HRSA") of the United States Department of Health and Human Services ("HHS"). *Id.* at p. 7. The LRP supports the recruitment and retention of health professionals by repaying the qualified educational loans of program participants. *Id.* In exchange for loan repayment, a participant agrees to provide three

years of clinical practice at a NHSC-approved treatment facility located in a designated health professional shortage area. *Id.* at p. 8.

LRP award finalists are notified by email to log into their application account, via the BHW customer service portal, to confirm interest in receiving an award. (ECF No. 26-2 at p. 50.) Applicants are asked to confirm that they have read and understand the LRP contract and to provide their direct deposit banking information for award funds. *Id.* An applicant becomes a participant in the LRP, and the contract becomes executed, once she electronically signs the contract and the contract is countersigned by the HHS Secretary (or her designee). *Id.* The terms of the LRP contract between the participant and the Government are set forth in the contract as specified by section 338B of the Public Health Service Act. 42 U.S.C. § 254*l*-1.

Section E of the LRP contract sets forth the contract termination provisions. It provides:

1. The Secretary may terminate this Contract:
   a. within sixty (60) days following the execution of the Contract (i.e., signature of both parties), if the applicant;
      i. submits a written request to terminate this Contract; and
      ii. repays all amounts paid to, or on behalf of, the applicant under Paragraph 2 of Section A of this Contract; or
   b. at any time if the applicant has not received the funds due under this Contract.

(ECF No. 26-2 at p. 92.)

The LRP contract termination provision is set forth by statute. Section 254*o*(c)(2) of U.S.C. Title 42 provides:

> **(2)** The Secretary may terminate a contract with an individual under section 254*l*–1 of this title if, not later than 45 days before the end of the fiscal year in which the contract was entered into, the individual—
> **(A)** submits a written request for such termination; and
> **(B)** repays all amounts paid on behalf of the individual under section 254l–1(g) of this title.

In 2021, this section was amended by a congressional appropriations act as follows: "In lieu of the timeframe specified in section 338E(c)(2) of the PHS Act, terminations described in such section may occur up to 60 days after the effective date of a contract awarded in fiscal year 2021 under section 338B of such Act, or at any time if the individual who has been awarded such contract has not received funds due under the contract."  U.S.C. § 254*o*(c)(2); Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, 1590 (2020).

The Fiscal Year 2021 NHSC Substance Use Disorder Workforce Loan Repayment Program Application and Program Guidance ("APG") further provides:

> A written request for contract termination should be submitted through the BHW Customer Service Portal.  If the NHSC SUD Workforce LRP funds have been disbursed to the participant, they will receive separate instructions via the BHW Customer Service Portal or directly from an NHSC representative outlining the process for returning the awarded funds.
>
> Requests to terminate the contract after sixty (60) days will not be considered, unless the individual who has been awarded such contract has not received funds due under the contract.  Participants who do not meet the conditions for contract termination will be expected to perform their obligations under the contract.  Failure to fulfill the terms of the contract may be considered a breach of contract.

(ECF No. 26-2 at p. 25.)  The LRP contract also lists the statutory damages the government will be entitled to in the event of a breach.  *Id.* at p. 92; 42 U.S.C. § 254*o*(c)(1)*.*  In the event an applicant fails to begin or complete the period of obligated service, the applicant shall be liable to the United Sates for an amount equal to the sum of:

> a.  the total of the amounts paid by the United States to, or on behalf of, the applicant under Paragraph 2 of Section A of [the] Contract for any period of obligated service not served;
>
> b.  an amount equal to the product of the number of months of obligated service not completed by the applicant, multiplied by $7,500 for the months of full-time service not completed; and
>
> c.  interest on the amount described in a. and b. of this paragraph at the maximum legal prevailing rate, as determined by the

> Treasurer of the United States, from the date of the breach;
> except that the total amount the United States is entitled to
> recover under this Section shall not be less than $31,000.

(ECF No. 26-2 at p. 92.)

On July 27, 2021, Plaintiff signed the LRP contract through which she agreed to provide three years of full-time clinical practice in exchange for partial student loan repayment. (ECF No. 1 ¶ 13; Ex. 1, ECF No. 1-1; ECF No. 26-2 at p. 94.) The contract was countersigned, and thus executed, by the Secretary's designee on August 9, 2021. *Id.* Plaintiff initiated her service at Lifeline Connections in Vancouver, Washington, pursuant to the terms of the contract. (ECF No. 1 ¶ 13.) On August 24, 2021, Plaintiff received her award email. (ECF No. 1 ¶ 14.; ECF No. 29-1 at p. 7.) The Participant Award Notification letter informed Plaintiff that the LRP contract obligated her to perform three years of clinical service "from August 09, 2021 through August 08, 2024 at the NHSC-approved site(s) that [she] verified and confirmed with the acceptance of [her] award." (ECF No. 26-2 at p. 95.) The letter also directed Plaintiff to access her BHW Customer Service Portal Account, review the 2021 APG, and informed her that award funds would be distributed approximately 90 days after August 9, 2021, her contract start date. *Id.*

On August 30, 2021, Plaintiff contacted the BHW Customer Care Center to inquire as to the deadline to decline her award, the ability to transfer to another site, when her obligation started, and whether declining an award would impact a future application. (ECF No. 26-3 at p. 17.) The call center agent informed Plaintiff of the contract termination provisions described above and confirmed that the LRP service obligation becomes effective once the contract is countersigned by the Secretary. *Id*.

On or about November 3, 2021, award funds of $75,000 were deposited in Plaintiff's bank account. (ECF No. 1 ¶ 17; ECF No. 26-4 at p. 32; ECF No. 26-5 at pp. 17, 22.) On November 5, 2021, Plaintiff contacted the call center once again. (ECF No. 1 ¶ 17; ECF No.

26-3 at p. 14.)  She asked how to terminate her interest in the award, how to return the award funds without penalty, whether she could transfer to another service site if she kept the funds, and claimed she never received her "award email" with instructions to set up her participant portal.  (ECF No. 26-3 at p. 14.)  The call center agent sent Plaintiff an email that included instructions for setting up her participant portal, her service start date of August 9, 2021, directions to reference the 2021 APG for any other information, and directions for how to terminate the contract.  *Id.* at p. 15.

After requesting a password reset from a call center agent, Plaintiff submitted a written termination request through her participant portal on November 22, 2021.  (ECF No. 1 ¶ 22; ECF No. 26-3 at p. 14.)  On December 8, 2021, Plaintiff received an email from NHSC informing her that her termination request was denied as untimely and because her award funds had been disbursed prior to her request.  (ECF No. 1 ¶ 22; ECF No. 26-4 at p. 6.)  Plaintiff sent several follow up emails and requests to terminate her contract; in response, she was informed that the agency "had no legal authority to deviate from the statutory language" of the contract termination provision and, thus, appeal of the termination denial was not possible.  (Ex. 3, ECF No. 1-3; ECF No. 26-4 at p. 13.)

Plaintiff resigned from her NHSC approved site on December 31, 2021, but did not inform the NHSC.  (ECF No. 26-4 at pp. 26-31.)  On January 4, 2022, Plaintiff was informed that if she did not complete her service obligation, she would be in breach of her LRP contract. *Id.* at p. 26.  On April 28, 2022, Plaintiff received by email a breach of contract notification. (ECF No. 26-4 at pp. 47-50.)  The email included resources to assist Plaintiff in maintaining compliance with the contract, including information regarding eligibility to transfer to another NHSC-approved treatment site.  *Id.*  By email of June 4, 2022, Plaintiff responded that she had not wanted to continue with the program or her contract since "last August" and she had retained legal counsel.  *Id.* at p. 47.

In June 2022, in an attempt to return her award funds, Plaintiff mailed a check for $75,000 to a general HRSA address, but NHSC returned the check to Plaintiff on June 23, 2022. (ECF No. 1 ¶ 23; ECF No. 26-4 at pp. 41-41.)  In August 2022, Plaintiff was informed that her case had been recommended for default and was provided a debt estimate of $305,077.55, plus interest.  (ECF No. 26-5 at p. 25.)  Plaintiff then submitted a request for suspension due to maternity leave, which was granted retroactively from July 1 through November 1, 2022.  (ECF No. 1 ¶ 25; ECF No. 26-5 at pp. 51, 81.)  On October 28, 2022, in response to an email from Plaintiff's counsel, NHSC informed counsel that Plaintiff's termination request was denied in accordance with the contract termination provision of the LRP contract and provided options for avoiding default of Plaintiff's service obligation, including COVID-19 placement flexibilities, suspension, and waiver.  (ECF No. 26-7 at pp. 8-10.)

On March 20, 2023, Plaintiff was notified via email that she was in breach of her contract and had been recommended for default.  (ECF No. 26-5 at p. 146.)  On April 13, 2023, the HHS Program Support Center sent a formal debt-collection notice identifying the damages owed due to default of the LRP contract and noting that full payment was due by November 3, 2023, one year from the date of default of November 2, 2022 (after Plaintiff's maternity suspension).  (ECF No. 26-9 at p. 3-4.)  As of March 6, 2025, the total debt owed is $338,270.31.  *Id.* at pp. 7-8.  To date, the only payment received toward the debt is a Treasury offset in the amount of $3,284.72.  *Id.*  Plaintiff has made no voluntary payments.  *Id.*

## II.    **PROCEDURAL HISTORY**

Plaintiff initiated this action against Defendant HHS on June 6, 2024.  (ECF No. 1.)  Plaintiff seeks judicial review under the Administrative Procedure Act ("APA") and declaratory relief.  (ECF No. 1 at p. 13.)  Plaintiff's Complaint raises the following counts:

Count I: APA Claim Pursuant to §§ 702 and 706(2)(A) – (B)

Count II: Declaratory Judgment; and

Count III: Violation of Due Process under U.S. CONST. AMEND. V.

(ECF No. 1 ¶¶ 30–64.)  On March 11, 2025, Defendant filed its Motion, seeking dismissal of or, alternatively, summary judgment on all claims.  (ECF No. 29.)  On April 21, 2025, Plaintiff filed a response to the Motion.  (ECF No. 37.)  Defendant filed its reply on May 19, 2025.  (ECF No. 46.)

## III.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction."  *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016).  "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction."  *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019).  "In determining whether jurisdiction exists, 'the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue.'"  *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D. Md. 2019) (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)).  Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge.  *Trump,* 416 F. Supp. 3d at 479.

A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction."  *Id.*  A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true."  *Id.*  (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same).  Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court

is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

Here, Defendant asserts a facial challenge to the court's subject matter jurisdiction. Specifically, Defendant asserts Plaintiff is not entitled to judicial review under the APA or the Declaratory Judgment Act ("DJA") because Defendant lacked authority to terminate the LRP contract where Plaintiff failed to meet statutory termination requirements. (ECF No. 29-1 at pp. 16-21.) Under the APA, judicial review is limited to "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. "Because 'sovereign immunity is jurisdictional in nature,' finality under the APA is a jurisdictional requirement." *Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024) (quoting *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019)). Additionally, a claim under the DJA does not confer subject matter jurisdiction absent an independent jurisdictional ground. *Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d 616, 619 (4th Cir. 1997) (citing *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16–17 n.14 (1983)).

**B.  Federal Rule of Civil Procedure 12(d)**

As set forth above, Defendant brings its Motion as a motion to dismiss or, alternatively, for summary judgment. "A motion with this caption implicates the court's discretion under FED. R. CIV. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule

56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 WL 5335477, at *3 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Where a movant expressly captions a motion as one for summary judgment "in the alternative," the non-movant is "on notice that this motion might be treated as one for summary judgment"; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

"Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol v. M&T Bank*, 713 F. Supp. 3d 89, 100 (D. Md. 2024) (citing *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542–43 (D. Md. 2012)). Even where a party fails to file an affidavit, "a district court abuses its discretion by granting summary judgment when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (quoting *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)).

The nonmovant may not, however, "complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds

that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see Shaw*, 59 F.4th at 128 (same).   A non-movant "may not demand discovery for discovery's sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Gardner v. United States*, 184 F. Supp. 3d 175, 181–82 (D. Md. 2016) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995)).

The first requirement is plainly met here where Plaintiff had notice that the Motion may be treated as a motion for summary judgment based on the caption of the Motion.  *See Laughlin*, 149 F.3d at 260, *supra*.   Moreover, Plaintiff's response to the Motion is titled as a "Response to Defendant's Motion for Summary Judgment."  (ECF No. 37.)  As to the second requirement, Plaintiff does not argue that discovery is needed.   Plaintiff argues that summary judgment is inappropriate because there remain disputed issues of material fact.  (ECF No. 37 at p. 1.)  In her response, Plaintiff primarily argues that Defendant's proffered construction of the contract contradicts its plain terms, a purely legal argument.  *Id.*

In support of its Motion, Defendant relies on the administrative record it filed on March 10, 2025.  (ECF No. 26.)  Rule 56 requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of the materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  Plaintiff does not dispute the authenticity or admissibility of the administrative record filed by Defendant.   Further, "[j]udicial review of administrative action is generally confined to the administrative record."  *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335 (4th Cir. 1995); *see Audubon Naturalist Soc'y of The Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 660 (D. Md. 2007) (providing that "[b]ecause claims brought under the APA are adjudicated without a trial or discovery, on

the basis of an existing administrative record, such claims are properly decided on summary judgment.").  For the foregoing reasons, the court will convert the Motion to one for summary judgment as to Count III of the Complaint.

### C. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh

evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## IV.   ANALYSIS

Defendant asserts four arguments in its motion: (1) Plaintiff's claims should be dismissed under Rule 12(b)(5) because Defendant has not been properly served; (2) Plaintiff's APA claim (Count I) is jurisdictionally barred because she is not entitled to judicial review under the APA and she fails to state an APA claim entitling her to the relief she seeks; (3) Plaintiff's DJA claim (Count II) does not provide a basis for the court's subject matter jurisdiction or an independent basis for relief; and (4) Plaintiff's Fifth Amendment claim (Count III) should be dismissed (or judgment for Defendant should be granted) because enforcement of a statutory contract does not violate Plaintiff's due process rights. (ECF No. 29-1 at pp. 13-20.) The court begins by addressing whether the court has subject matter jurisdiction over Counts I and II of Plaintiff's Complaint under the APA and the DJA.

### A.  Subject Matter Jurisdiction

#### 1.  *APA Claim*

In assessing whether the court has subject matter jurisdiction over Plaintiff's APA claim, the court must first assess whether Defendant's refusal to allow Plaintiff to terminate her LRP contract constitutes a final agency action subject to judicial review. Plaintiff asserts that "Defendant's refusal to allow Plaintiff to void or terminate her LRP Contract constitutes an agency action" subject to judicial review. (ECF No. 1 ¶ 36.) Defendant argues that Plaintiff is not entitled to judicial review under the APA because the agency lacked authority to

terminate the contract where Plaintiff failed to submit a written request within the applicable deadline set forth by statute and received the funds due under the contract.  (ECF No. 29-1 at pp. 18-19.)

The APA waives the federal government's sovereign immunity to permit judicial review of agency action in limited circumstances.  5 U.S.C. § 702.  Such review is available in suits brought by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" and who seeks "relief other than money damages."  *Id*. Importantly, judicial review is limited to "final agency action for which there is no other adequate remedy in a court."  *Id*. § 704.  "Because 'sovereign immunity is jurisdictional in nature,' finality under the APA is a jurisdictional requirement."  *Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024) (quoting *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019)).

"Agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13). Agency action is "final" when two conditions are met: (1) "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948), and *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatl.*, 400 U.S. 62, 71 (1970)); *see Biden v. Texas*, 597 U.S. 785, 808 (2022) (quoting *Bennett*, 520 U.S. at 178).  "An action must meet both prongs of the *Bennet* test to be final." *Jake's Fireworks*, 105 F.4th at 631.  The challenged agency action at issue here, Defendant's "refusal" to terminate Plaintiff's LRP contract, fails to meet the first prong of the *Bennet* test.

Defendant points the court to *United States v. Gary*, where the Eighth Circuit held that the HHS Secretary's rejection of a physician's offer to fulfill his defaulted National Health Service obligation at a non-approved site did not constitute final agency action under § 704 of the APA. 963 F.2d 180, 185 (8th Cir. 1992). The defendant, Dr. Gary, a participant in the NHSC Scholarship Program, signed a contract to provide medical care to underserved areas for three years in return for payment of his medical school tuition. *Id.* at 182. After Dr. Gary failed to satisfy his service obligation under the contract, he was found in breach and the government sought recovery of statutory damages. *Id.* Under a Special Repayment Program subsequently enacted by Congress, Dr. Gary was given an opportunity to serve out his obligation rather than pay off his debt. *Id.* He failed, however, to meet the statutory prerequisites of the Special Repayment Program when he failed to submit timely written documentation of an offer of employment from an approved work site and his acceptance of that offer. *Id.* at 183.

The Eighth Circuit found that once the defendant "defaulted and failed to qualify for the Special Repayment Program, he had no statutory right to have his officer of service considered or accepted by the Secretary. The Secretary's rejection of his offer did not in any way impose or establish a new legal relationship between the Public Health Service and [the defendant]." *Gary*, 963 F.2d at 185. In other words, the governing statute did not entitle the defendant to have his untimely offer considered. Consequently, the Secretary's rejection of an offer that failed to meet statutory requirements did not constitute final agency action subject to judicial review under the APA. *Id.*

The court observes that *Gary* predates the two-part test articulated in *Bennet,* and that the facts differ slightly from the case at hand, but a similar analysis applies here nonetheless.

As set forth above, the LRP contract provides in pertinent part:

> Section E: Contract Termination
> 1.  The Secretary may terminate this Contract:

14

    a.  within sixty (60) days following the execution of the Contract (i.e., signature of both parties), if the applicant;

        i.  submits a written request to terminate this Contract; and

        ii.  repays all amounts paid to, or on behalf of, the applicant under Paragraph 2 of Section A of this Contract; or

    b.  at any time if the applicant has not received the funds due under this Contract.

(ECF No. 26-2 at p. 92.) Also as explained above, the governing statute, as amended, provides that the Secretary may terminate an LRP contract within 60 days following its execution if the applicant provides a written request for termination and repays any funds awarded; or, per the amending Appropriations Act cited above, the Secretary may terminate an LRP contract at any time on an applicant's written request if funds have not yet been awarded.  Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 260, 134 Stat 1182, 1590 (2020) ("In lieu of the timeframe specified in section 338E(c)(2) of the PHS Act, terminations described in such section may occur up to 60 days after the effective date of a contract awarded in fiscal year 2021 under section 338B of such Act, or at any time if the individual who has been awarded such contract has not received funds due under the contract.")  Importantly, the Appropriations Act's allowance for contract termination "at any time" where funds have "not yet been awarded" is based on reference to "terminations described" in § 254*o*(c)(2), which expressly requires the "individual" to make a written request for termination.

The LRP contract was executed on August 9, 2021, and Plaintiff received her award funds on or about November 3, 2021.  (ECF No. 26-2 at p. 94; ECF No. 26-4 at p. 32; ECF No. 26-5 at pp. 17, 22.)  Consequently, Plaintiff had until on or about November 3, 2021, when the award funds were distributed, to submit a written termination request.  As Plaintiff concedes, her first "official" written request to terminate the LRP contract was submitted on November 22, 2021, more than 60 days after August 9, 2021, and well after the award funds were distributed.  (ECF No. 1 ¶ 22.)

Plaintiff does not dispute the above facts; instead, she argues that the LRP contract is "the result of mutual mistake between the parties regarding the manner in which Plaintiff must terminate" and that "the wording [of] the contract is at best, ambiguous[.]" (ECF No. 1 ¶ 33, 55.) As Defendant correctly notes, however, "the relationship between the NHSC scholar and the Government is statutory and not contractual, and [] ordinary contract principles do not apply to the agreements governing that relationship." *United States v. Vanhorn*, 20 F.3d 104, 112 (4th Cir. 1994). "[T]he plain language of the statute demonstrates that Congress did not intend that contract principles govern the interpretation of the relationship between the Secretary and a scholarship recipient." *Id.* (quoting *Rendleman v. Bowen,* 860 F.2d 1537, 1542 (9th Cir.1988)). The same applies to the relationship between an NHSC LRP participant and the HHS.[1] Therefore, recovery on grounds of common law contract (or equity) principles like mutual mistake is unavailable to Plaintiff. Plaintiff offers no response in opposition to this point.

Where statutory language is unambiguous and "the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240-41 (1989). Plaintiff asserts that the contract termination provision located in Section E of the LRP contract is at best ambiguous because subsection 1.a. expressly requires a written termination request and repayment within 60 days of execution, while subsection 1.b. creates an alternative termination pathway that does not require a written request to terminate. (ECF No. 1 ¶ 55; ECF No. 26-2 at p. 92.) The court disagrees. While the LRP contract is not a model of draftsmanship, as made clear by the governing statute (as amended by the Appropriations Act), subsection 1.b. merely removes the 60-day cap on contract termination if no funds have yet been disbursed; it does not remove the requirement that an applicant (the "individual" in the statute) make her

---

[1] Like the NHSC Loan Repayment Program, the NHSC Scholarship Program is codified under 42 U.S.C. § 254*l*.

termination request in writing.   And, even were the court to agree that the contract is muddled, as made clear by the Fourth Circuit in *Vanhorn, supra,* the governing statute rules the day.   And the statute is not muddled; it is clear.

Just as the defendant in *Gary* was not entitled to have his untimely offer considered for failure to meet statutory requirements, Plaintiff here is not entitled and has no statutory right to have the Defendant accept or process a termination request that fails to meet the statutory requirements of the termination provision of the LRP contract.   Defendant had no statutory authority to consider Plaintiff's untimely written termination request after receipt of the award funds.  As such, Defendant's inability to terminate the LRP contract does not constitute a "final agency action" under § 704 of the APA because it is not an action that marks "the 'consummation' of the agency's decisionmaking process."   *Bennet*, 520 U.S. at 156. Accordingly, the court lacks subject matter jurisdiction over Plaintiff's APA claim.[2]   Count I of Plaintiff's Complaint will be dismissed.

### 2. *Declaratory Judgment Claim*

Count II for declaratory judgment similarly fails for lack of subject matter jurisdiction. As Defendant notes at pages 20 and 21 of the Motion, "the DJA does not provide a source of jurisdiction which is independent of substantive federal law."   *Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d 616, 619 (4th Cir. 1997) (citing *Franchise Tax Board v. Constr. Laborers*

---

[2] Even had Plaintiff met the statutory requirements for termination of the LRP contract, the court would still lack subject matter jurisdiction over the APA claim because agency action is not subject to judicial review when the "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  "Agency action is committed to the agency's discretion when no judicially manageable standards are available to assess how and when an agency should exercise its discretion such that a court would have 'no law to apply.'"  *Pharm. Coal. for Patient Access v. United States*, 126 F.4th 947, 964 (4th Cir. 2025) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830–31 (1985)).  The APA's prohibition of judicial review of actions committed to agency discretion by law, and a defect related thereto, "goes to subject matter jurisdiction."  *Id.* (citing *Angelex Ltd. v. United States*, 723 F.3d 500, 505–506 (4th Cir. 2013)).  Because the contract termination provision provides that "[t]he Secretary *may* terminate" the LRP contract if the statutory requirements are met, termination authority is vested solely in the Secretary and the statute provides no judicially manageable standard to assess how the Secretary exercises that discretion.  42 U.S.C. § 254o(c)(2) (emphasis added).   Defendant's ability to consider termination of the LRP contract when statutory requirements are met is an action committed to agency discretion by law and not subject to judicial review.

*Vacation Trust*, 463 U.S. 1, 16–17 n.14 (1983)).  Declaratory judgment is a remedy, not an independent claim itself.  "Accordingly, a federal district court may not issue a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, . . . absent an independent basis for jurisdiction." *Artis v. T-Mobile USA, Inc.*, No. PJM 18-2575, 2019 WL 1427738, at *5 (D. Md. March 29, 2019) (citing *Univ. Garden Apartments Joint Venture v. Johnson*, 419 F. Supp. 2d 733, 742 (D. Md. 2006)).  Plaintiff provides no substantive response to Defendant's argument in her reply and thus concedes this point.  (ECF No. 37.)  Because the court will dismiss Plaintiff's claims that provide the only basis for such relief, Count II will also be dismissed.

## B. Fifth Amendment Due Process Claim

Count III of Plaintiff's Complaint alleges that Defendant infringed her Fifth Amendment due process rights by failing to acknowledge her "statutory right to terminate" the LRP contract, imposing "excessive penalties and punitive fees," and failing to "effectively or adequately inform her of her termination status."  (ECF No. 1 ¶ 61-63.)  Defendant argues that its refusal to permit termination after Plaintiff's failure to meet the statutory requirements for contract termination does not deprive Plaintiff of a guaranteed due process right and that Plaintiff has no "legitimate right of entitlement."  (ECF No. 29-1 at pp. 21-22.)  Again, Plaintiff does not rebut Defendant's argument in her response to the Motion.  (ECF No. 37.)

To establish a due process claim, Plaintiff must first identify a legitimate claim of entitlement to a protected liberty or interest.  This she cannot do.  The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."  U.S. CONST. AMEND. V, § 1.  "These words mean that the government may not take certain actions without providing procedural protections mean to prevent erroneous decisions." *Elhady v. Kable*, 993 F.3d 208, 219 (4th Cir. 2021).  "[T]o advance a due process claim, [a plaintiff] must first establish that he had a property or liberty interest at stake." *Smith*

*v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002).  Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source" such as a statute.  *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972).  Of import here, "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."  *Strickland v. United States*, 32 F.4th 311, 348 (4th Cir. 2022) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must . . . have a legitimate claim of entitlement to it."  *Roth,* 408 U.S. at 577.

Statutorily created benefits, like the NHSC LRP, can give rise to a legitimate claim of entitlement where the statute meaningfully limits "the discretion of the decisionmakers" once the intended beneficiary meets "certain particularized eligibility criteria."  *Mallette v. Arlington Cnty. Employees' Supplemental Ret. Sys. II*, 91 F.3d 630, 635 (4th Cir. 1996).  "On many occasions [the Fourth Circuit] has held that discretionary statutory 'rights' do not create liberty or property interests protected by the Due Process Clause."  *Smith*, 295 F.3d at 430.  As explained previously, the LRP contract and the rights and obligations it confers are governed by statute, not general contract principles.  *United States v. Vanhorn*, 20 F.3d 104, 112 (4th Cir. 1994).  The LRP contract and its governing statute specify the requirements a participant must meet to request termination of the contract and the applicable damages formula in the event of participant default.  42 U.S.C. §§ 254*o*(c)(1) and (c)(2).  Significantly, even where the participant meets these requirements, the statute does not require termination of the contract; instead, it allows only that the "Secretary may terminate" the contract.  *Id.* at § 254*o*(c)(2).  Consequently, the discretionary statutory right to termination of the LRP contract does not

create a legitimate claim of entitlement to a property interest protected by the Due Process Clause.

Moreover, courts have routinely upheld the damages provision of the NHSC Scholarship Program and LRP against challenges, even where the resulting damages were substantial. *See Vanhorn*, 20 F.3d at 113 (holding that the disparity between the amount the NHSC scholarship recipient received, $26,582, and the amount of damages awarded to the Government, $183,953.12, was not unconscionable and that the recipient had been reminded of the escalating penalties and given several opportunities to satisfy her contractual obligations through service); *United States v. Citrin,* 972 F.2d 1044, 1051 (9th Cir. 1992) (holding that the statutorily prescribed damages provision of the NHSC Scholarship Program "are not so unreasonable that they violate due process"); *United States v. Melendez*, 944 F.2d 216, 219 (5th Cir. 1991) (concluding "[t]hat Congress intended the obligation of an NHSC participant be fulfilled except in extreme circumstances as indicated by the punitive nature of the liquidated damage provision set out in § 254*o*(b)."); *Singer v. Dep't of Health & Hum. Servs.*, 641 F. Supp. 2d 1219, 1228 (D. Utah 2009) (finding that "[t]he statutory purpose of imposing such drastic liquidated damages is to ensure that the LRP participants fulfill the full term of their service obligations.").

Because no genuine dispute of material fact exists and Plaintiff does not have a constitutionally protected property interest in termination of the LRP contract, Defendant is entitled to summary judgment on Count III of Plaintiff's Complaint.

## V.   <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, the Motion (ECF No. 29) shall be granted.[3]

---

[3] Given that Plaintiff's claims warrant dismissal on the grounds discussed above, the court need not address Defendant's argument that Plaintiff's claims should be dismissed for failure to properly serve the federal agency. (ECF No. 29-1 at pp. 13-14.) Nevertheless, the court notes that dismissal of Plaintiff's claims is also warranted under Federal Rule of Civil Procedure 12(b)(5) for failure to effect service pursuant to Rule 4(i), which requires

December 5, 2025

/S/

_____

Julie R. Rubin
United States District Judge

---

that Plaintiff serve the United States attorney for the district where the action is brought, the Attorney General of the United States, and the agency.  FED. R. CIV. P. 4(i).  The affidavits of service filed by Plaintiff do not demonstrate that the agency has been served in accordance with Rule 4(i).  (ECF Nos. 13, 14.)